Next case is Bridges v. Wilson, 20-53-7. Counselor Reddy, so give me one second here. Okay, Mr. Mortensen. Yes, Mr. Mortensen, you may proceed. Yes, may it please the court. My name is Thomas Mortensen. I represent the appellant who was the plaintiff at the district court. This is an appeal of the granting of summary judgment based on a assertion of immunity, state law-based immunity under the Oklahoma Governmental Tort Claims Act. This court should find for the appellant and remand the matter for essentially three reasons. The first one being that when the court decides issues of a state grant of immunity under the Oklahoma Governmental Tort Claims Act, it should interpret it based on state substantive law. And I've cited several cases for that prospect, Gurich and Smith v. Stillwater. The second reason is that the district court made certain factual findings that should have precluded summary judgment even based on this granting of immunity. And the third reason is that the record contains evidence, at least a vast amount of factual disputes, that should have precluded summary judgment based on whether or not the officer was conducting a protective activity or a law enforcement activity. The evidence that being several statements, which I've included in my brief, that talk about how he believed he was responding to a possible crime. Let me ask you about the first point you made. You're absolutely right that state substantive law applies, but aren't we bound by 10th Circuit precedent that interprets state law, absent some intervening state court decision that undercuts it? So isn't it appropriate here for us to look at prior, at least published 10th Circuit opinions? Yes, absolutely, Judge. You should. However, I think that the prior decisions don't refer to, don't defer to the substantive law as decided by the Oklahoma Supreme Court. For example, in some of the cases cited in the Rule 28 letter by L.E., they don't even interpret Smith v. City of Stillwater. They don't interpret State v. Gurich, which fundamentally changes the way that that specific immunity is applied to the context of police actions. And those, the Oklahoma cases you're referring to that weren't addressed, predated our decision? We just missed them or ignored them? Depending on what case that you're talking about. If there's an intervening Oklahoma court decision, then we would not be bound by something we had said before that Oklahoma decision, contrary to what we said in our decision. We've got a problem if we simply misinterpret or ignore a state precedent. I think we're probably still bound by our 10th Circuit case, even though if we had looked at our decision. Am I wrong about that? Or did I even make sense? You did, Judge. And I'm afraid I have to take the position that would be wrong, that you would be bound by that prior published 10th Circuit decision if it in fact ignores state substantive law or the interpretation of this by the Oklahoma Supreme Court. It's not, I don't think it's a, it's not a battle of the decision making from the Oklahoma Supreme Court versus the 10th Circuit. It is a matter of really fundamentally, the state of Oklahoma finally coming in line with the type of interpretation to that specific immunity that other states have found themselves bound to. Oklahoma was pretty unique in that we found ourselves granting immunity to an officer who all, I mean, the way that case law read, it could lead to very perverse results. For example, a police officer steps out of a car, sees a person that needs protection, decides to shoot at them instead. And the only thing that they need to cite to in response to our summary judgment is that they were in the act of protecting. The initial stages of protecting, that's all that a person would have to say. They don't have to provide any proof. For example, the appellee didn't provide any proof, and they certainly didn't respond to the allegations that were raised by the in the deposition testimony where he says he's responding to a crime. Certainly, these are law enforcement functions and not protective. You can have a mixed protective and police action in the same way in that school case. Yes. Yes, you could. But by definition, if you have a law enforcement activity, I think it takes it outside the scope of that immunity. Go ahead. Yeah. What is the effect of the jury verdict on everything we're talking about right now? And maybe just step back and describe for us what was at stake with the jury and what the jury found, and then tell us how that affects anything we're dealing with now. Well, unfortunately, it was a general verdict. So, I don't believe one could necessarily discern a great deal of... One could discern that the jury did not believe that the deputy had acted wrongly in firing shots. One could certainly discern that, Judge. Isn't that the only conclusion from that? Well, I think, though, that at the time that the decision was made to grant summary judgment for the governmental entity here, in this case, we didn't have that jury verdict to decipher. And we had a court, district court, saying, I believe that the evidence shows, in a light most favorable to the plaintiff appellant, that this individual didn't even fire a gun at the officer. But we have it now, and it's a big iceberg. And I want to know how we get around that iceberg, if you have a way. Well, number one, it was a general verdict. I don't even know if it was made a part of the record by... It wasn't... I don't believe by me. I don't believe by the appellee either, or whether or not there are factual findings you can discern from that. But I think that the fundamental differences between 1983 law and qualified immunity is different than what you have as far as the negligence standards that apply to the Governmental Tort Claims Act. And I think these differences really fundamentally show the difference between the types of cases that are interpreting this immunity in favor of officers, because all these cases decided by the appellee, situ cases were, and in every single one of them, the court found that the officer's conduct was objectively reasonable. However, in this case, the district court found that the officer's actions was not objectively reasonable at the time that that decision was made. But I understand the concern and the potential impact. Did the court find that it wasn't objectively reasonable, or that a fact finder could have decided it wasn't objectively reasonable? The district court found that there were certain facts when analyzing the light most favorable to the plaintiff. Okay. That's the important thing. We have had cases where a district court... That's very interesting. Judge Phillips brought this up because I can recall, I think, a case where the municipality was improperly granted summary judgment. The case went ahead against the individual, and the jury found, didn't get into qualified immunity, just said there was no we decided that that would be binding, kind of a issue preclusion result. And so the decision to grant summary judgment to the municipality was affirmed because that would have had to be the result. If the case had been tried with the municipality as a defendant, the jury would have had to find in favor of the municipality given the finding with respect to the officer. Now, you've said that there are differences in the substantive law here because we don't know whether the jury verdict granted a defense verdict based on qualified immunity, or just that it wasn't a constitutional violation and the state law just requires negligence. Am I understanding you correctly? Yes. The standards are fundamentally different. A bit of a stretch. I don't know how they could be analyzed in the same paragraph, really. Well, is there a way that the jury could find that there wasn't a constitutional violation and still find that the deputy was negligent? Isn't the jury's finding that essentially the deputy had to return fire? Otherwise, they would have said that was excessive force. That's where I'm stuck right now. Well, without the kind of special interrogatories that you would give to a jury where they parcel out certain facts that they specifically find, I don't know that I feel comfortable trying to speculate about what a jury might find in the confines of a jury deliberation room. I have yet to figure out any jury, whether they come back positive for me or not. I don't know what their rationale or what their thinking is. They might not have locked my tie. Or they might not have liked the way that the plaintiff testified. There are so many other variables, so many other facts that without the special interrogatories to define what facts they found, I don't know that we could do so here. I assure you our decision will not be based on your tie. Thank you. I would like to reserve a certain amount of time for rebuttal if I could, if there are no other questions. I think Judge Kelly has a question. No? No? I guess no. Very good. Thank you, Mr. Mortensen. Mr. Miller? May it please the court, Your Honor. There's one question here before the court, and that is Title 51, Oklahoma Statute 1556 applies to the instant case. That is an exemption from liability under the Oklahoma Governmental Tort Claims Act for acts of civil disobedience, claims resulting from civil disobedience, riot, insurrection, rebellion, or the failure to provide or the method of providing law enforcement or fire protection. Judge Prezell of the District Court properly held that that exemption did apply to the claims against defendant board, and we would ask that this court affirm Judge Prezell's ruling. As you know, there are several Oklahoma Supreme Court cases that are relevant to this, including Schmidt v. Grady County, Salazar v. City of Oklahoma City, and they lay out the distinction that is made between when general law enforcement services are being provided versus protective services. How about Morales v. Oklahoma City? Well, that was a split deal. He was protective in part, and he turned it into a police action in part. I think the Oklahoma Supreme Court in ruling on Morales determined that you look at the actions of the officer vis-a-vis the individual. You know, maybe it's my machine, but I can barely understand what you're saying. Everyone, can anyone else hear me? It's not very good quality. Very poor quality, but go ahead. The more still you say, the more we can hear you. It's when when you're doing this that I lose you. I apologize. Morales v. City of Oklahoma City focused on a situation in which an officer was trying to break up a fight between various students. He saw that one individual female had hit one of the other students, and in then breaking up that fight, he arrested that individual. He was assigned to the school as a safety officer, wasn't he? Right. He was engaging in law enforcement services. The Oklahoma Supreme Court determined that vis-a-vis the individual who he arrested, and the arrest was very key to that matter, that he was providing law enforcement services rather than protective services. Plaintiff pointed out several cases, State v. Borich and Smith v. City of Stillwater. He maintains that those somehow changed the law in this case. I would present that they do not. They are both cases involving police pursuits in which individuals were injured or killed during a police pursuit of a vehicle. Just a minute. Let me ask you this. He was originally sent out to protect somebody who was concerned. They were concerned the person was going to commit suicide, correct? In the incident case, yes, your honor. Now, how do you protect somebody, at least with a dispute of the facts, when you shoot him 13 times through the door, and there's a dispute as to whether or not he had fired in the first place? Your honor, I would present that any disputes of fact that the district court or the 10th circuit found are not relevant because the question here is whether he was engaged in protective services. Well, how do you get engaged in protective services when you're supposed to protect? Your honor, if you look at the 10th circuit case, Samuel v. City of Broken Arrow, which Judge Frizzell found was highly persuasive, it is a similar case in which there was a domestic violence call and there was a shooting during the attempted engagement in protective services. The court found that you have to look at the subjective component of what the is. That's a non-presidential case, correct? Yes, your honor. Also, I did present it in a 38-J letter, your honor. Mr. Miller. I think perhaps that sound quality is bad because you're talking loud. Maybe this is unusual, but maybe if you talked a little softer, we'd hear you better, but in any event. A little lower. Yeah. We'll be back in our courtroom soon, but let me, I'm having the same problem that Judge Kelly is. Judge Phillips, that was preliminary to a question I had. Oh, please. You said you look to the officer's subjective intent, but here we have a statement that when he was asked, a residence like that, he said, a residence that you're called to where there's possibly a crime going on. And here the call was not just that he would commit suicide, but that he might hurt the caller's daughter, I think it was. So if it's enough to have a partial subjective criminal intent, why was that not satisfied here? Why isn't there sufficient evidence at least? Your honor, I would maintain that if there is significant evidence that he was going out there in order to talk to the individual, that he knew the individual, that he thought he could talk to that individual and calm them down. He had significant training on how to deal with He was asked one question in his deposition of part of the reason why he had turned his lights off, and he didn't make the comment that you referenced, your honor. But if you look at the record, it also indicates that he thought he could talk to the individual, calm them down. Let me ask you what the law is here, what your view of the law is. It seems to me that his sufficient to overcome summary judgment on the issue of whether it was exclusively for protected purposes. Are you saying that even if it's not exclusively for protective purposes, you can still be protected under the statute? I am, your honor. And if you look at Samuel V. Studio Broken Arrow, it makes that exact point that if there is a mixed mixed purpose, both for 1556 to apply. That's specifically mentioned in the 10th Circuit case in Samuel. Is that consistent with Oklahoma law? Haven't the Oklahoma cases said otherwise, that if it's a mixed motive, the officer loses or at least loses that immunity? I don't believe so, your honor. I think 10th that case that to do otherwise would be to eliminate the distinction between protective services and law enforcement services. And I think that is your position is as long as there's originally well supported claim that one of the motives of the officer is protective services, then there's immunity. Or are you saying it has to be the predominant if it's the predominant motive is protective services? There's a beauty. I'm not sure that the case law has clarified what percentage of the motive has to be protect has to be protective services. But I think if there is a mixed motive, I think that is sufficient, though. I would also say we do not concede that there is a mixed motive here. There's extensive testimony that he went out there to try to calm Mr Bridges down that he wanted to be able to talk to him that he knew Mr Bridges. There was no indication that he was trying to arrest Mr Bridges or that he was doing anything other than engaging in protective services and trying to help Mr Bridges based on his suicidal training, his cleat training on mental health, his extensive history running a home for individuals with mental health disabilities. And that's the reason he was there. The one comment in his deposition in which he states that he was he knew there might be a crime going out there. That doesn't mean he was going to arrest Mr. Mr Bridges. The extensive testimony is the opposite. He was there to try to help him and to try to calm him down. If I may, one question. I'm the same place Judge Kelly is, which is I don't understand any of this discussion because this is not something, we don't have a situation where we're examining what a policeman did with respect to a person and was the policeman by restraining this person protecting the person or was it arresting the person. We never get there. The deputy arrives and whatever's in his head, I'm not sure I care because what the deputy is doing is investigating. The deputy is trying to figure out what do I have here. Do I have the protective services or do I have an arrest? And never gets to that point of deciding that or learning facts that enable the deputy to determine that because it's met with gunfire. And shooting back is not a protective service. I agree with Judge Kelly on that. So, help. I don't understand why. I understand all those other cases that you're citing, why that was important, but I don't know how they apply to this at all. Well, there's a series of cases, your honors. I also cited several in the 28J, Hodge v. Keene of the Western District, Myers v. Oklahoma County, Cuero v. Sulphur and Morris for a state. In several of these, they received a 911 call about a suicidal or intoxicated or both individual. And during an attempt to help those people, even if there's a claim of possibly hurting others as well, in order for something to be going on where potentially that individual could be in harm's way or other individuals, there were shootings or tasings. And this court, various district courts below you, have consistently found that in those circumstances, 1556 does apply, even if they never got to the point of actually getting the person in custody, where there is a encounter of some type during an attempt to engage in those protective services and potentially get that individual into custody. When various things have occurred, you know, these courts have found that the 1556 exemption does apply. So, I believe it would apply in this scenario just the same. Would you comment on the jury verdict and whether that helps you at all? What do you think the jury verdict decided? I believe that the jury verdict determined that Mr. Wilson did not violate Mr. Bridges' 1983, 42 U.S.C. 1983 constitutional rights. Are you sure it didn't decide it based on qualified immunity? I don't think that's clear from the jury's verdict one way or the other. We don't know that it decided that. It may have said, it may have decided, was it instructed on qualified immunity? I believe it was, Your Honor. Well, it may have said what the officer did was negligent and may have even violated the decedent's constitutional rights, but the law wasn't clearly established at that time. That's consistent with the verdict? I don't believe that's in the record before, Your Honor, but I do believe that that is potentially consistent. That being said, as to Judge Phillips' point, the jury did not believe it appears the facts in the light most favorable to the plaintiff, which would be under the plaintiff's version and the version potentially found by the district court was potentially conceivable that he just walked up and shot him through the door for no reason whatsoever. I think it is hard to square out that circle if the jury were to find that it simply wasn't clearly established or that it was negligent but didn't meet some other standard. Under the plaintiff's theory that Mr. Wilson came up to the Mr. Bridges was inside and he shot him through the door for no reason at all, I think that would that would pretty clearly be negligent behavior. So I think you can certainly infer that the jury did determine that they believe Mr. Wilson's... Well, the court determined took that issue away from the jury on summary judgment, didn't it? Negligence did not go to the jury in that case. Correct. It's a 1983 issue. That is true. So that they couldn't find anything. It wasn't before them. The jury did not have instructions on negligence in front of them. You're correct, John. Thank you. So, in conclusion, to the extent plaintiff is attempting to rely on Glorich and State and Stillwater, these cases in no way change the underlying rules under Oklahoma Supreme Court law and under law here, which is what you look at whether or not he was engaged in protective services or general law enforcement services. You are entitled to look at his subjective mind process and even a mixed motive is sufficient as long as he is partially engaged in protective services. That has been clear throughout his testimony, Mr. Wilson, that that's what he was engaged in. Whether or not he was negligent in the performance of those protective services is not the question here. The question is whether or not he was engaged in protective services in the first place. And I would submit that Judge Frizzell was correct on that point. And there are no disputes, in fact, that are relevant to that issue. And thus this to begin by asking you a question, if I may. I'm trying to understand the purpose of this statutory immunity in Oklahoma. I assume that, tell me if I'm misunderstanding, that the statute was enacted because officers are sued, could be sued for negligence, when they're engaged in protective services and they hurt somebody. Sometimes officers engaged in protective services do end up shooting the person. It seems to happen a lot more than it should. Maybe it shouldn't be protected, but they do. And the person who a loved one is worried about and they call the police and say, this person's going to hurt himself. And the police come and they kill the guy, which is very unfortunate. But I assume that the purpose of the statute is that sometimes when officers engage in protective services, they're dealing with very labile people, very upset people, maybe even suicidal people who are willing to, may be involved in suicide by cop, as they say. So these try to get to the chase and I'm taking more time than I hope to. These are very problematic situations and sometimes they go terribly wrong, as happened here. Isn't this just the sort of situation that the statute was meant to they're trying to protect somebody from himself in this case, and that person acts in a very dangerous, self-destructive manner. Would you respond? Maybe I'm totally misunderstanding what the purpose of the statute is. Judge, and I think anyone looking at the cases in the statute would get a jumbled mess. There may be a lot of misunderstanding. That's exactly why I believe this court really needs to set out a defining rule of law with respect to this exception, exemption. It would be better if the Oklahoma courts did rather than us, but go ahead. I think that they have. And I think that Smith v. City of Stillwater fundamentally changed the landscape. The purpose of the statute, as dictated by Gerge and Smith, and by the way, Samuel v. Broken Arrow was in 2012. Smith v. City of Stillwater, which fundamentally changed the landscape, was in 2014. So Samuel was predated or was earlier than Smith. But it says that what they're talking about as far as the method of providing police protective services, they're talking about the method. They're talking about the implementation of policy. I analogize that in my brief to like legislative function, how they vote on stuff, how they decide what their policies are going to be, and how they implement these policies. And they should not be applied to the individual officer making discretionary decisions out in the field. This statute was never supposed to apply to those individual officers. That's what Smith says. That's what Gerge says. And counsel's right. These cases had to do with car chases. But the exemption under 155.6 was not dicta. It was the main thrust. It was the main focus of these decisions and how they should be applied. In Gerge, it says the government retains immunity with respect to the formulation of policy, but is subject to liability for routine decisions and daily implementation. So the individual officer should not have been applied to this statute in the first place. Are you saying that liability should depend on what the municipality's policy was? It sounds like you're getting into the same sort of thing as in 1983. I'm not talking about policy or policy decisions from the decision makers. That's not what I'm talking about. What I'm talking about is those decisions are immune under the statute and should be immune because they're policy-based decisions on how their policy should be implemented out there. But it ends when the police officer leaves out the door and has to make those day-to-day decisions. That immunity does. Now, there are other immunities that apply, but not this. This meant for the policy makers. When would it come up? If an officer goes to a home because a family member is worried about an individual being suicidal and doing very dangerous stuff and the person who you've come to help starts shooting at the officer, you don't think the immunity applies to the officer's response to the shooting, is that right? That's correct. There are a milieu of other immunities that would apply in that instance, but not this particular one, not 155-6. Because once he's responding to being shot at, it's changed from protective to criminal. Is that the reason? No, sir. Because the way that Smith and Gerge lays it out, these exemptions were meant for the policy makers, not the individual officers who are alleged to have committed tortious acts. Not at all. It's been interpreted in so many different ways, but I think these two cases from the state of Oklahoma Supreme Court, which are definitive, I think there's a fundamental change in the state's substantive law. As a matter of fact, Oklahoma was the last holdout with respect to interpreting it that way. Now, we finally come in line with the other states that we've stolen those exemption statutes from. I took all your time away with my questions. I don't know if the other judges have any questions, but I should give you at least a minute if you would like to respond to anything that Mr. Miller said. Yes, Judge, I appreciate that. Council said that when there's a hybrid event of both police protective services and law immunity would apply. Now, in Samuel v. City of Broken Arrow, that's not what the court held. It held that immunity did apply, but it talked about how the state Supreme Court interpreted that protection as how it was defined in this case is restraining a subject or suspect from hurting themselves, which is a lot different from what the actions are here. Whenever you arrest, whenever you seize, not to protect that person, that turns it into a law enforcement function, and you can't have both under Oklahoma law. I believe Salazar was the defining principle behind that, but also I think there's also a fundamental difference between when a person's taken into custody as opposed to events that happened before the person's taken into custody. Like Morales, which I've heard, it talks about how that individual that was arrested at the school, that person wasn't seeking protective services. That person wasn't seeking any police protection. Nobody was seeking any protection that didn't come up, and it was an afterthought. Thank you, counsel. Case is submitted. Counselor excused.